IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRELL JOVAN PARKER,

   **Plaintiff,**

    v.         **CASE NO.  25-3106-JWL**

J. KIDD, et al.,

   **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is detained at the Reno County Jail in Hutchinson, Kansas ("RCJ").  This matter is before the Court for screening Plaintiff's Complaint under 28 U.S.C. § 1915A.

### I.  Nature of the Matter Before the Court

Plaintiff's Complaint stems from an incident that occurred on April 30, 2025.  According to the Complaint, an inmate in the cell next to Plaintiff set off the sprinkler system, flooding A Pod of the RCJ.  (Doc. 1-1, at 2.)  Several deputies arrived to clean up the water.  *Id*.  They let the inmate who caused the flooding out of his cell to go upstairs without being cuffed.  *Id*.  Deputy Kidd then came to Plaintiff's cell and told him to cuff up.  *Id*.  Plaintiff questioned why he had to cuff up, and Kidd got angry.  *Id*.  He retrieved the taser gun and opened the food pass to Plaintiff's cell.  *Id*.  Plaintiff had put his sleeping mat in front of the door.  *Id*.  While trying to explain, Plaintiff leaned toward the food pass and put his arm through.  *Id*.  Kidd repeatedly slammed Plaintiff's hand and arm with the food pass door.  *Id*.; Doc. 1, at 3.  He then grabbed Plaintiff's arm to extend it and held the stun gun on his arm, shocking him several times.  *Id*. at 1, 3.  When

Plaintiff asked him to let go, Kidd smiled and said, "Yeah, motherfucking nigger. Yeah." (Doc. 1, at 3; Doc. 1-1, at 3.) Plaintiff eventually pulled his arm free. (Doc. 1-1, at 3.) Kidd left and returned with Deputy Dubby. *Id*. Plaintiff cuffed up, and Kidd put him in cell A1 where there was also standing water on the floor. *Id*. They left Plaintiff cuffed with "extra tight" cuffs for two hours causing bleeding and nerve damage to Plaintiff's wrists. *Id*.; Doc. 1, at 2. Plaintiff states that he feared for his life. (Doc. 1, at 2.) He also claims that he was the only African-American inmate on A pod and the only inmate who was not moved out of the water. *Id*. Photographs were taken of Plaintiff's injuries after the incident, but he alleges that he was denied medical care, such as an x-ray of his injured and swollen arm and treatment for burns from the taser. (Doc. 1, at 4; Doc. 1-1, at 1.)

In response to Plaintiff's grievance about the incident, Sergeant McDaniel said, "When an officer gives you the command to let go of the food pass door, you should follow that command. Had you done that, no force would have been necessary." (Doc. 1-1, at 3.) Plaintiff appealed the grievance, and two other RCJ officials rejected his appeal. Captain Blumanhoerst said, "I have reviewed video of this incident, talked with another inmate in A pod and also other Deputies present. Based on interview and video I cannot see any of what you describe." *Id*.

Plaintiff claims that Kidd used excessive force and racist slurs. He further claims he was subjected to racial discrimination and denied medical care. Plaintiff names as Defendants the Deputy J. Kidd; Sergeant McDaniels; Captain Blumanhoerst; and Shawn (lnu), Undersheriff of Reno County. Plaintiff seeks relief in the form of $2 million.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did

3

it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### A. Excessive Force

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). The Fourteenth Amendment governs any claim of excessive force brought by

a "pretrial detainee"—one who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Est. of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Bell v. Wolfish,* 441 U.S. 520, 536 (1979). On the other hand, the Fourth Amendment governs excessive force claims arising from "treatment of [an] arrestee detained *without a warrant*" and "*prior to* any probable cause hearing." *Id.*

Excessive force claims under both the Fourteenth and Fourth Amendments are based on objective reasonableness. The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *see also Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee."). Therefore, to make out a Fourteenth Amendment violation, Plaintiff must show that the defendants' conduct "was objectively harmful enough to establish a constitutional violation." *Brown*, 974 F.3d at 1183.

In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Vette*, 989 F.3d at 1169 (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). "The inquiry is an objective one, and one that considers the totality of the circumstances." *Id*. Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Supreme Court in *Graham* listed factors that may be relevant to the reasonableness analysis: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396). In evaluating the final factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Vette*, 989 F.3d at 1169. The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

## B. Racial Discrimination

Racial discrimination claims are cognizable under the equal protection clause of the Fourteenth Amendment. An equal protection violation occurs when the government treats someone differently than another person who is similarly situated. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). To state a claim, a plaintiff must show that the defendants treated him less favorably than other inmates solely because of his race. *See Morman v. Campbell County Memorial Hosp.*, 623 F. App'x 927, 934 (10th Cir. 2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). A plaintiff has the burden of showing "the existence of purposeful discrimination," *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and that the purposeful discrimination "had a discriminatory effect" on him. *Id.* A plaintiff must show that he (or a class in which he is a member) was "intentionally treated differently from others similarly situated." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) (citation omitted).

However, the Tenth Circuit has made clear that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)).

### C.  Denial of Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.[1] "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could

---

[1]   Although a pretrial detainee's denial of medical care claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies.  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Delay in providing medical care does not violate the Eighth Amendment, unless there has

been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir.

1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit

requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v.*

*Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm

requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*

*v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th

Cir. 2001)).

A mere difference of opinion between the inmate and prison medical personnel regarding

diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*,

429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)

(prisoner's right is to medical care—not to type or scope of medical care he desires and difference

of opinion between a physician and a patient does not give rise to a constitutional right or sustain

a claim under § 1983).

"A plaintiff 'need not show that a prison official acted or failed to act believing that harm

actually would befall an inmate,' but rather that the official 'merely refused to verify underlying

facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly

suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023)

(quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still

state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is

not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

## IV. Motions for Appointment of Counsel

Plaintiff has filed two motions for appointment of counsel (Docs. 6 and 7), arguing that he is financially unable to afford counsel.

The Court has considered Plaintiff's motions for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).

The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiff's claims survive screening.

## V. *Martinez* Report

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the RCJ.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials of the RCJ to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED** that**:**

(1)  Officials responsible for the operation of RCJ are directed to undertake a review of the subject matter of the Complaint:

a.      To ascertain the facts and circumstances;

b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to the Complaint and should be considered together.

(2)  Upon completion of the review, a written report shall be compiled which shall be filed with the Court by **August 20, 2025,** and served on Plaintiff.  The RCJ officials must seek leave of the Court in order to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric

10

examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)  Authorization is granted to the officials of the RCJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)  No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(5)  Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Reno County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the Sheriff may move for termination from this action as interested party.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Appointment of Counsel (Docs. 6 and 7) are denied without prejudice.

Copies of this order shall be transmitted to Plaintiff, to the Reno County Sheriff, and to the District Attorney for Reno County, Kansas.

**IT IS SO ORDERED**.

**Dated July 21, 2025, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE